**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| RONALD MORIN, *on behalf of himself and all others similarly situated*, <br> 1471 A Street NE <br> Washington, D.C. 20002 <br><br> Plaintiff, <br> vs. <br><br> JPMORGAN CHASE & CO., <br> 270 Park Ave. <br> New York, NY 10017 <br><br> Defendant. | Case No.: 17-387 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiff Ronald Morin ("Plaintiff"), on behalf of himself and the proposed Class defined herein, brings this class action suit against Defendant JPMorgan Chase & Co. ("Chase" or "Defendant"). In support of this Class Action Complaint, Plaintiff alleges, based on his personal knowledge and the investigation of his counsel, as follows:

## NATURE OF THE ACTION

1.     This action arises out of a deceptive and unlawful scheme by Chase to deprive citizens who perform their civic duties of the statutorily mandated payments they are legally entitled to for jury service.

2.     In Washington, D.C., for example, jurors in all Superior Courts are entitled to $4 a day for travel, plus an additional $30 for each day of trial, unless they are a full-time government employee or a private employee compensated their normal salary by their employer.

3.     Chase, which is responsible for issuing statutory juror service payments to eligible persons, is able to perpetrate a money-making scheme whereby it siphons juror service money by automatically issuing pre-loaded debit cards (the "Card") that are laden with fees for both using the Card or not using the Card. State laws governing juror service payments do not

require jurors to pay fees to access their payments.

4.    Jurors are not given an option on the form of payment, but are presented with the Card on a take it or leave it basis. Jurors are either unable to use the funds and/or obtain the entirety of the money they are entitled to because of a myriad of non-disclosed fees, penalties, charges, and access barriers associated with both the use and non-use of the Cards. Even if a juror immediately tried to withdraw all of his or her earnings from an automated teller machine ("ATM"), he or she is unlikely to be able to because ATMs in the District of Columbia, like most ATMs, do not allow for the withdrawal of funds that are outside multiples of $20.

5.    Due to the unavoidable financial burdens and inconvenience built into the Cards, Chase unfairly retains juror payments.  If jurors were given an option to receive their payment by check, which they are not, they would likely select a check based on the array of associated fees and barriers to access.

6.    By and through unfair and illegal practices alleged herein, and as explained in detail below, Chase has unjustly enriched itself by implementing a payment system that is designed to deprive citizens of the money they are owed from performing their civic duties.

## PARTIES

7.    Plaintiff Ronald Morin is a citizen and resident of the District of Columbia.

8.    Defendant JPMorgan Chase & Co. is a multinational banking and financial services holding company headquartered in New York City, New York. It is the largest bank in the United States and has assets valued at approximately $2.5 trillion. Chase does business throughout the United States, including in the District of Columbia.

## JURISDICTION AND VENUE

9.    The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2), because (i) at least one member of the Class is a citizen of a different state than the Defendant, (ii) the amount in controversy exceeds $5,000,000, exclusive of interests and costs, and (iii) none of the exceptions under that subsection apply to this action.

2

10.     This Court has personal jurisdiction over Defendant because Chase regularly conducts business in this Judicial District, and the events giving rise to this lawsuit occurred, in substantial part, in this District.

11.     Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Plaintiff's claims occurred in, were directed to, and/or emanated from this District.

12.     This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

**FACTUAL BACKGROUND**

**I.      An Overview of Jury Duty and the Payment Provided in Washington D.C.**

13.     Jury duty is vital to the American judicial system. The democratic principle of being judged by one's peers in a criminal trial is explicitly woven into the fabric of this country—the Sixth Amendment.  As such, the jurors, along with the judge, are largely responsible for protecting the rights and liberties of their fellow citizens who find themselves in the judicial system.  Thus, jury service is a highly important civic duty that aids in upholding justice.  Hundreds of thousands of persons are called for jury duty each year.

14.     Because jury duty is integral to the country's judicial system, it is mandatory to appear for it when summoned. While employers are not permitted to fire an employee for being called to jury duty, they are also not typically required to pay wages during the time a person spends discharging their duty.  Apart from possibly losing work pay, a juror may also incur travel expenses, and often is required to spend time away from his or her family. Thus, to lower the financial burden and increase participation, all jurisdictions in the United States provide nominal compensation to jurors.

15.     For example, in the District of Columbia, a juror serving in the Superior Court of the District of Columbia receives a daily travel subsidy of $4, and an additional $30 per day if selected for trial, unless he or she is a full-time government employee or is a private employee

3

who receives their normal salary by their employer.[1]

16.     Historically, courts have paid jurors by check and in the context of un-cashed checks, such monies usually ends up in a state treasury's Unclaimed Property Division where a juror might be able to later claim. With the proliferation of debit cards, courts and other governmental agencies have turned to cost-saving measures, including the issuance of debit cards.

## II.     An Overview of Chase's Barriers to Access and Non-Disclosed Fees, Penalties, and Charges

17.     Chase entered into agreements with various state court systems whereby the parties agreed that juror payments would be paid through the Chase Cards. For example, the D.C. court system began using Chase's debit card system to pay jurors in or around August of 2011.  Other state court systems have followed.

18.     Jurors have no choice but to accept the Cards, which are laden with fees and burdens designed to allow Chase to take portions, if not all, of the money owed to these residents.

19.     Chase loads a juror's Card with funds after the completion of jury service.  The appropriate amount of money is automatically loaded on the Card based on the juror's service. While this may seem acceptable in theory, practically speaking it is not. This system benefits Chase, to the direct detriment of the juror.

20.      To begin, a juror is unable to use the Card until it is activated.  To activate the Card, a juror must call the number provided on it, or visit www.ucard.chase.com.  After following the activation steps, the juror is presented with the Card's Terms and Conditions, which he or she must agree to in order to verify identity and to receive a PIN.  The Terms and Conditions, however, provide zero information regarding the Card's fees, penalties, charges, or barriers. Thus, jurors have not agreed to Chase's menu of fees.

---

[1] District of Columbia Courts, Getting Paid *available at* www.dccourts.gov/internet/jurors/gettingpaid/main.jsf (last visited March 1, 2017).

21.     Once the juror has an activated card, the Card's excessive and unconscionable fees, penalties, charges, and barriers are also activated.

22.     A normal debit card allows one to withdraw cash from the issuing bank's branch, typically at no charge.  However, this is far from true with the Cards Chase provides to jurors.  A juror who attempts to do this will be charged a $7.00 "Over the Counter Withdrawal" fee.  This fee is $7.00 regardless of whether it is accomplished at a Chase branch, or a third-party institution.  Thus, someone who is summoned but not selected for jury duty will never be able to obtain his or her earned $4.00 travel subsidy in cash.  Moreover, in the event a juror is selected for one day and receives $30.00 (plus the $4.00 travel subsidy), he or she must relinquish over 20% of their earned money simply to receive it in cash.

23.     Alternatively, if a juror wishes to obtain a check for the balance of his or her Card, Chase charges an issuance fee of $15.00. It does not take a mathematician to realize this too is an absurdly high fee, especially when looking at its proportional value to the jury fees paid by the Superior Court.

24.     Chase's obvious purpose in implementing the unconscionable Over the Counter Withdrawal fee ($7.00) and check issuance fee ($15.00) is to discourage jurors from removing their money from the Chase Card system.  Even if a juror is willing to part with a significant portion of their earned juror money, there may not be a Chase branch close by. For example, there is not a Chase branch within 90 miles of Washington D.C.

25.     While an "In-Network ATM" is advertised as being "FREE" for cash withdrawals, the truth is, there is not a Chase ATM within Washington D.C. Moreover, Chase does not identify any non-Chase In-Network ATMs in Washington D.C.  Thus, jurors are essentially forced to use an "Out-of-Network ATM" if they want to make a cash withdrawal. However, using an Out-of-Network ATM does not come without a cost.

26.     Anytime a juror uses an Out-of-Network ATM, he or she is automatically charged $2.00 by Chase. Moreover, after the first withdrawal, any applicable ATM surcharges are also deducted from the Card's balance.  ATM surcharges typically start at $2.00 and can reach $5.00.

Thus, it is not far-fetched that jurors will lose nearly $5.00 or more, if using an ATM in Washington D.C.  And again, jurors are only able to withdraw funds in multiples of $20.00 from an ATM, making it very likely that a remainder will exist on the Card that will be inaccessible to jurors.

27.     Chase clearly intended to make it economically impracticable to remove the money from the Card.  This is because the fees, penalties, and charges associated with using (or not using) the Card like a debit card are likely to chip away at the balance until all of the remaining money is pocketed by Chase.

28.     Chase already earns a significant amount of money from the fees it charges merchants to process debit charges. In 2009 alone, there were 38 billion debit transactions and the average merchant fees have skyrocketed. From 2004-2010, merchant fees rose from 1.39 percent of a transaction's value to 1.85 percent for signature debit cards; and from 0.61 percent to 0.72 percent for PIN debit purchases.

29.     Although Chase already earns significant revenue from merchant fees, apart from imposing the fees discussed above, Chase also imposes unfair fees if the Cards are used like a normal debit card.

30.     For example, Chase charges a juror $0.25 for a "Declined Point of Sale" transaction.  This means, if a juror tries to buy something that is ultimately more than his or her remaining balance, the transaction will be declined and he or she will be charged $0.25. Therefore, to avoid the Declined Point of Sale transaction, a juror needs to know the remaining balance.  Checking the balance of the Card through an ATM costs money, however; for that, Chase charges $0.45.  Thus, a juror whose charge was declined because of an insufficient remaining balance, who then checked the balance, will lose $0.70 to Chase for nothing in return. And this is substantial considering many residents only get the $4.00 travel subsidy.

31.     Beyond the charges for using or attempting the use the Card as a debit card, Chase also imposes charges for non-activity. After only 90 days of non-use, Chase charges an "Inactivity Charge" of $1.50 for every subsequent month it remains inactive.  This ensures that

the unused Cards' funds will be siphoned to Chase.  And considering how difficult it is to find an item that perfectly matches a juror's remaining balance after-tax, Chase is very well-positioned to retain a portion of the Card's balance.

32.     Below is a table reflecting all the fees associated with the Card as compared to a consumer debit card that Chase offers the public, the Chase Liquid Card ("Liquid Card"). The right column shows the amount by which the juror's Card is more expensive than the Liquid Card that Defendant offers.[2]

| Type of Transaction | Chase Liquid Card | Chase Card | Difference |
|---|---|---|---|
| Over the Counter Withdrawal Fee | $0.00 | $7.00 | $7.00 |
| Check Issuance Fee | $8.00 | $15.00 | $7.00 |
| ATM Balance Inquiry | $0.00 | $0.45 | $0.45 |
| Out-of-Network ATM Fee | $2.50 + 3rd ATM surcharge | $2.00-6.00 | Similar |
| Declined Point of Sale Fee | $0.00 | $0.25 | $0.25 |
| Non-Activity Fee (after 90 days without activity) | $0.00 | $1.50/month | $1.50/month |

### III.     Chase Has a History of Taking Advantage of Consumers Through the Use of Unfair Fees

33.     This is not the first suit challenging Chase's predatory debit card practices in connection with government payments it is responsible for issuing.

34.     In *Krimes v. JPMorgan Chase Bank, N.A., et al.* Case 2:15-cv-05087-ER,

---

[2] A Guide to Chase Liquid Card at 1, *available at* https://www.chase.com/content/dam/chasecom/en/debit-reloadable-cards/documents/chase_liquid_v6.pdf (last visited March 1, 2017).

Defendant was sued for a similar deceptive and illegal debit card scheme. This suit arose because Chase entered into an agreement with federal Bureau of Prisons to issue debit cards to released federal prisoners. The debit cards were preloaded with any money the individuals possessed at the time of their incarceration. While this money belonged to former inmates, it was automatically placed on a debit card without their consent, as in this case.

35.     As in this case, Chase charged excessive fees for inmates' use of the debit cards. Many of the associated debit card fees at issue in *Krimes* are the same that Chase has imposed on Plaintiff and the Class. Chase ultimately agreed to settle the claims in *Krimes* and on October 26, 2016, the Honorable Eduardo C. Robreno granted preliminary approval of the settlement. The final fairness hearing is set for April 12, 2017.

**IV.     At Least One Other Jurisdiction Has Discontinued Using Debit Cards to Pay Jurors Due to Unfair Fees**

36.     In July of 2013, the court system in Norfolk, Virginia started paying jurors with debit cards issued by SunTrust. The decision was made because it was less expensive for the city than issuing checks.

37.     Over the years, however, consumers complained. It became apparent that the jurors' debit card balances were getting eaten by the fees. The Norfolk treasurer sought advice from the Attorney General.

38.     Ultimately, the Norfolk court system decided that while it may be less expensive to issue debit cards instead of checks, it was inappropriate for a third-party financial institution to receive jurors' money. SunTrust reimbursed the individuals who had been charged and agreed to stop charging fees on cards issued for jury service.

**V.     Plaintiff's Experience.**

39.     Plaintiff Morin is a resident of Washington D.C. and was summoned for jury duty in January 2017. He was paid with a Chase Card which currently has a small balance that Mr. Morin is unable to withdraw from an ATM or over the counter without incurring cost prohibitive fees.

## CLASS ACTION ALLEGATIONS

40.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and a nationwide class of similarly situated individuals, defined as follows:

> **Nationwide Class**: All individuals in the United States who received compensation for jury service and were paid with a Chase Debit Card.

In the alternative, Plaintiff Morin brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2), 23(b)(3), and 23(c)(4) on behalf of himself and a class of similarly situated individuals, defined as follows:

> **Washington D.C. Class**: All Class members residing in Washington D.C. who received compensation for jury service and who were paid with a Chase Debit Card.

The following people are excluded from the Nationwide Class and Washington D.C. Class (collectively the "Class," unless otherwise indicated): (1) any Judge or Magistrate presiding over this action and members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which the Defendant or its parents have a controlling interest and its current or former employees, officers and directors; (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

41.     **Numerosity (Fed. R. Civ. P. 23(a)(1))**: The exact number of Class members is unknown and not available to Plaintiff at this time, but individual joinder in this case is impracticable.  In 2014 in Washington D.C. alone, the D.C. Superior Court sent more than 150,000 jury summons. Thus, the Class likely consists of thousands of individuals. Members of the Class can be easily identified through Defendant's records.

42.     **Commonality and Predominance (Fed. R. Civ. P. 23(a)(2); 23(b)(3))**: There are many questions of law and fact common to the claims of Plaintiff and the other members of the

Class, and those questions predominate over any questions that may affect individual members of the Class. Common questions for the Class include:

a)    whether Chase is legally permitted to charge Plaintiff and Class members fees in connection with the use of the Cards;

b)    whether Chase is legally entitled to retain any unused money remaining on the Cards issued to Plaintiff and Class members;

c)    whether Chase violated the District of Columbia's Consumer Protection Procedures Act;

d)    whether Chase is unjustly enriched by the Card payment system;

e)    whether Chase violated the Electronic Fund Transfer Act;

f)    whether Plaintiff and Class members are entitled to restitution and/or damages, and if so, the proper measure of restitution and/or damages; and

g)    whether Plaintiff and Class members are entitled to equitable and/or injunctive relief.

43.    **Typicality (Fed. R. Civ. P. 23(a)(3))**: Plaintiff's claims are typical of the claims of the other Class members. Plaintiff and the Class members sustained damages as a result of Defendant's uniform wrongful conduct during transactions with Plaintiff and the Class.

44.    **Adequate Representation (Fed. R. Civ. P. 23(a)(4))**: Plaintiff has and will continue to fairly and adequately represent and protect the interests of the Class, and he has retained counsel competent and experienced in complex litigation and class actions. Plaintiff has no interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff. Plaintiff and his counsel are committed to vigorously prosecuting this action on behalf of the members of the Class, and they have the resources to do so. Neither Plaintiff nor their counsel have any interest adverse to those of the other members of the Class.

45.    **Policies Generally Applicable to the Class**: This class action is appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards

10

of conduct toward the members of the Class and making final injunctive relief appropriate with respect to the Class as a whole. Defendant's policies challenged herein apply and affect the members of the Class uniformly and Plaintiff's challenge of these policies hinges on Defendant's conduct with respect to the whole of the Class, not on facts or law applicable only to Plaintiff.

46.     **Superiority (Fed. R. Civ. P. 23(b)(3))**: This class action is also appropriate for certification because class proceedings are superior to all other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. The damages suffered by the individual Class members will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's wrongful conduct. Thus, it would be virtually impossible for the individual Class members to obtain effective relief from Defendant's misconduct. Even if members of the Class could sustain such individual litigation, it would not be preferable to a class action because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

47.     **Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P 23(b)(1) and (2))**: In the alternative, this action may properly be maintained as a class action, because:

 (a) the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudication with respect to individual Class members, which would establish incompatible standards of conduct for Defendant; or

(b) the prosecution of separate actions by individual Class members would create a risk of adjudications with respect to individual members of the Class which would, as a practical matter, be dispositive of the interests of other Class members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

11

(c) Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

48.     **Issue Certification (Fed. R. Civ. P 23(c)(4)**):  In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the Class.

**FIRST CAUSE OF ACTION**
**Electronic Fund Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.***
**(On Behalf of Plaintiff and the Class)**

49.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

50.     Plaintiff brings this claim individually and on behalf of the Class and the Washington D.C. Class against Defendant.

51.     The main purpose of the EFTA is to protect consumers' rights in electronic fund transactions.  15 U.S.C. § 1693(b).

52.     Plaintiff and Class members' payments received through the Chase Cards constitute an "electronic fund transfer" as the money is electronically transferred to a debit account. § 1693a(7).

53.     Plaintiff and the Class members are "consumers" within the statute as they are natural persons. § 1693a(6).

54.     Defendant is a "financial institution" under the statute as it is a national bank that holds accounts belonging to consumers. § 1693a(9).

55.     Plaintiff and the Class members' accounts that hold the funds tied to the Chase card are "accounts." § 1693a(2).

56.     The EFTA, in part, prohibits a financial institution from requiring a consumer to establish an account for receipt of electronic fund transfers with a particular institution as a condition of employment or receipt of government benefits.  § 1693k(2); 12 C.F.R. § 1005.10(e)(2).

57.     Defendant directly violates § 1693k(2) because Plaintiff and the Class are required to establish an account with it to receive the money they are entitled to.  Plaintiff and the Class have no other option to receive the benefit.

58.     Defendant violates the EFTA as Plaintiff and the Class are forced to use the Chase Card to access their statutory funds; they are not given the choice to receive payment by any other means.

59.     Plaintiff and the Class have been injured as a result of the Defendant's violations of the EFTA and are thus entitled to damages.

### SECOND CAUSE OF ACTION
### Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904 *et seq.*
### (On Behalf of Plaintiff and the Washington, D.C. Class)

60.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

61.     Plaintiff brings this claim individually and on behalf of the Washington, D.C. Class against Defendant.

62.     The CPPA recognizes a right to truthful information, the violation of which provides the requisite standing to bring this claim.

63.     D.C. Code § 28-3904(a) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to represent that goods or services have a source, sponsorship, approval, certification, accessories, characteristics, ingredients, uses, benefits, or quantities that they do not have."

64.     Defendant violated § 28-3904(a) by representing to Plaintiff and members of the Class that the Chase Card is a debit card that allows an individual to retain and/or withdraw jury duty service payments from the account, when in fact Defendant's debit card payment system is designed to unlawfully and permanently convert Plaintiff and Class members' money into Defendant's property through excessive penalties, fees, charges, and forfeitures.

65.      D.C. Code § 28-3904(e) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to misrepresent as to a

material fact which has a tendency to mislead."

66.     Defendant violated § 28-3904(e) by representing to Plaintiff and members of the Class that the Chase Card is a debit card that allows an individual to retain and/or withdraw jury duty service payments from the account, when in fact Defendant's debit card payment system makes it impossible for an individual to fully withdraw all funds from the account.

67.     D.C. Code § 28-3904(e-1) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to represent that a transaction confers or involves rights, remedies, or obligations which it does not have or involve, or which are prohibited by law."

68.     Defendant violated § 28-3904(e-1) by representing to Plaintiff and members of the Class that the they had a right to freely retain, spend, or withdraw the funds in their Chase Card accounts, when in fact Defendant's debit card payment system is intentionally structured to deprive individuals of their money.

69.     D.C. Code § 28-3904(f) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to fail to state a material fact if such failure tends to mislead."

70.     Defendant violated D.C. Code § 28-3904(f) by concealing from Plaintiff and the Class that the Chase Cards are laden with excessive barriers, fees, penalties, and charges, and that because of these, Plaintiff and the Class are only able to retain or withdraw a portion of the funds held in their individual debit accounts.

71.     D.C. Code § 28-3904(f-1) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, for any person to use innuendo or ambiguity as to a material fact, which has a tendency to mislead."

72.     Defendant violated D.C. Code § 28-3904(f-1) by deliberately obscuring the true costs associated with use and non-use of the Chase Card, and by implying in marketing materials that Plaintiff and the Class can retain and withdraw the full amount of funds held in the debit accounts.

14

73.     D.C. Code § 28-3904(r) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, … for any person to make or enforce unconscionable terms or provisions of sales or leases."

74.     Defendant violated D.C. Code § 28-3904(r) by charging excessive fees for both the use and non-use of the Chase Card, particularly in light of the fact that Plaintiff and the Class had no other option to receive the pay they were entitled to.

75.     D.C. Code § 28-3904(u) makes it a violation of the CPPA, "whether or not any consumer is in fact misled, deceived or damaged thereby, to represent that the subject of a transaction has been supplied in accordance with a previous representation when it has not."

76.     Defendant violated D.C. Code § 28-3904(u) by purporting to offer a fair and reasonable payment method to those who acted as jurors, when in fact Defendant offered a predatory payment system that was designed to deprive Plaintiff and the Class of their earned money.

77.     D.C. Code § 28-3905(k)(1)(A) allows a consumer to bring a CPPA claim "seeking relief from the use of a trade practice in violation of a law of the District."

78.     Defendant violated a law of the District by unlawfully acquiring portions of the jury payments to Plaintiff and the Class, without their consent, when they are statutorily entitled to such payments pursuant to D.C. Code § 15-718.

79.     Plaintiff and the Class have been injured as a result of the Defendant's violations of the CPPA and are thus entitled to treble damages or $1500 per violation (whichever is higher), injunctive relief, equitable relief, punitive damages, attorneys' fees and costs of this suit, and any other further relief as justice may require.

### THIRD CAUSE OF ACTION
### Unjust Enrichment
### (On Behalf of Plaintiff and the National Class)

80.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

81.     Plaintiff brings this claim individually and on behalf of the National Class against

Defendant.

82.     Plaintiff and the Class were summoned for jury duty, attended, and were paid according to the applicable rule of their jurisdiction.

83.     Plaintiff and the Class were and are legally entitled to the full amount of the money paid to them from their jury duty service.

84.     Plaintiff and the Class were not given an option as to how to receive their money, and were exclusively paid for their jury service through Defendant's debit card system, whereby the money was placed in an account linked to the individuals' Cards.

85.     By using or not using the Cards, Plaintiff and the Class conferred benefits on Defendant, because of the various fees, penalties, and charges associated with both use and non-use of the Cards.

86.     Defendant knowingly accepted and retained this non-gratuitous benefit conferred upon it by Plaintiff and the Class, despite its knowledge that the debit card payment system was unfairly designed to deprive Plaintiff and the Class of the money they are entitled to for jury service.

87.     Defendant has been unjustly enriched in retaining the fees, penalties, and charges derived from Plaintiff and Class members' use or non-use of the Chase Cards.

88.     Retention of those moneys under these circumstances is unjust and inequitable because Defendant purposefully devised a payment system that deprives jurors of the money they are statutorily entitled to.

89.     The payment system associated with the Chase Cards caused injuries to Plaintiff and the Class because they would have been able to obtain and use the full amount of money had they been offered the option of receiving their pay by cash or check, or had the Chase Card system been organized as a traditional debit card without the excessive and unconscionable fees.

90.     No other remedy at law can adequately compensate Plaintiff and the Class for the economic damages resulting to them from Defendant's wrongful action as alleged herein.

91.      Because Defendant's retention of the benefits conferred on them by Plaintiff and

16

the Class is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class for
their unjust enrichment, as ordered by the Court.

<strong>FOURTH CAUSE OF ACTION</strong><br><strong>Conversion</strong><br><strong>(On Behalf of Plaintiff and the National Class)</strong>

92.     Plaintiff incorporates the foregoing allegations as if fully set forth herein.

93.     Plaintiff brings this claim individually and on behalf of the Class and the National
Class against Defendant.

94.     Plaintiff and the Class had, and continue to have, legal ownership of the funds that
were placed in Defendant's debit card system.

95.     Plaintiff and the Class were, and continue to be, statutorily entitled to all funds
placed in Defendant's debit card payment system for discharging their civic duty and showing up
for jury duty.

96.     Defendant intentionally devised the predatory debit card payment system in order
to interfere with the money earned by Plaintiff and the Class.

97.     Without consent or legal right, Defendant has unlawfully taken possession of
Plaintiff's and the Class' money through excessive fees, penalties, and charges associated with
the use and non-use of the Card.

98.     Defendant had and has a duty to refrain from illegal acts, including refraining
from diminishing the debit card users' accounts through a predatory payment system.

99.     Defendant has and continues to unlawfully acquire the money of Plaintiff and the
Class through its predatory debit card payment system.

100.     Defendant does not intend to reimburse Plaintiff or the Class of any money
received through the excessive fees, charges, and penalties associated with its debit card payment
system.

101.     As a direct and proximate result of Defendant's intentional interference, Plaintiff
and the Class have been deprived of their property held in Defendant's debit card payment

system.

102.    Plaintiff and the Class are entitled to the immediate possession of the funds in Defendant's debit card payment system, including any and all funds that have already been unfairly acquired by Defendant through the excessive fees, penalties, and charges associated with the use and non-use of the Card.

103.    Plaintiff and the Class have suffered and continue to suffer economic damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Class, respectfully requests that the Court enter an order:

A.  Certifying this case as a class action on behalf of the Class defined above, appointing Plaintiff as a representative of the Class, and appointing his counsel as class counsel;

B.  Restitution in such amount that Plaintiff and members of the Class were deprived of because of the fees, charges, penalties, and barriers associated with the use and non-use of Defendant's Cards, or the money Defendant recouped from the Cards;

C.  Declaring that Defendant's conduct, as set out above, violate the statutes alleged herein;

D.  Awarding damages, including restitutionary, statutory, and punitive damages where applicable, to Plaintiffs and the Class in an amount to be determined at trial;

E.  Awarding Plaintiffs and the Class their reasonable litigation expenses and attorneys' fees;

F.  Awarding Plaintiffs and the Class pre- and post-judgment interest, to the extent allowable;

G.  Awarding such other injunctive and declaratory relief as is necessary to protect the interests of Plaintiffs and the Class; and

H.  Awarding such other and further relief as the Court deems reasonable and just.

## DEMAND FOR JURY TRIAL

Plaintiff demands a trial by jury for all issues so triable.


Dated:  March 3, 2017                    **LEVI & KORSINSKY LLP**


                                         By:  /s/ *Donald J. Enright*
                                         Donald J. Enright (D.C. Bar No. MD013551)
                                         1101 30th Street NW, Suite 115
                                         Washington, DC 20007
                                         Tel: (202) 524-4290
                                         Fax: (202) 337-1567
                                         Email: denright@zlk.com

                                         Rosemary M. Rivas (to be admitted *pro hac vice*)
                                         Quentin A. Roberts (to be admitted *pro hac vice*)
                                         44 Montgomery Street, Suite 650
                                         San Francisco, CA 94111
                                         Tel: (415) 291-2420
                                         Fax: (415) 484-1294
                                         Email: rrivas@zlk.com
                                         Email: qroberts@zlk.com

                                         *Attorneys for Plaintiff and the Proposed Class*


## CERTIFICATE OF SERVICE

I,  , an attorney, hereby certify that on March 3, 2017, I served the above and foregoing document by causing true and accurate copies of such paper to be transmitted to all counsel of record via the Court's CM/ECF electronic filing system.


                        /s/ *Donald J. Enright*